UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEMMAT P.,[1]<br><br>Petitioner,<br><br>v.<br><br>WARDEN, CENTRAL VALLEY ANNEX DETENTION FACILITY, et al.,<br><br>Respondents. | No. 1:26-cv-08341-TLN-CSK<br><br>A # 232-818-117<br><br>**RELEASE ORDER** |

This matter is before the Court on Petitioner Demmat P.'s ("Petitioner") Petition for Writ of Habeas Corpus. (ECF No. 1.) Respondents filed a reply. (ECF No. 9.) For the reasons set forth below, the Petition for Writ of Habeas Corpus is GRANTED IN PART (ECF No. 1) and Respondents are ordered to provide Petitioner a bond hearing.

///

///

///

///

---

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. Factual and Procedural Background

Petitioner is a noncitizen who entered the United States on August 11, 2023, and was granted humanitarian parole until June 12, 2025. (ECF No. 9-1 at 2.) While in the United States, Petitioner worked as an HVAC specialist to support his wife, who is a United States citizen, and his stepdaughter. (ECF No. 1 at 11–12, 41.) Petitioner's wife filed for adjustment of status on his behalf, which remains pending. (*Id.* at 19.) Petitioner has been an active member of his church community. (*Id.* at 13.) His wife became pregnant and gave birth to a boy, who passed away shortly thereafter. (*Id.*) The family has been unable to bury their child due to Petitioner's present confinement. (*Id.* at 30–31.)

On February 22, 2026, local authorities arrested Petitioner on a warrant for robbery, aggravated battery on a pregnant woman, and tampering with a witness charges. (ECF No. 9-1 at 2; ECF No. 9-3.) The Broward County District Attorney's Office entered a notice of Nolle Prosequi, resulting in dismissal of the charges against Petitioner on July 30, 2026. (ECF No. 9-4.)

U.S. Immigration and Customs Enforcement ("ICE") arrested Petitioner on August 1, 2026, and served him with a Notice to Appear in immigration court. (ECF No. 1 at 3; ECF No. 9-2.) ICE subsequently transferred him to Central Valley Annex Detention Facility. (ECF No. 1 at 23.)

On October 13, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus.[2] (ECF No. 1.) Petitioner challenges the lawfulness of his civil detention and seeks immediate release. (*Id.*)

## II. Standard of Law

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in

---

[2] Petitioner also filed a duplicate petition the same day, which was dismissed by Judge Kirk Sherriff one week later. ([*D.*] *v. Warden of Central Valley Annex Detention Facility*, No. 1:26-cv-08367-KES-HBK, ECF No. 12).

custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. ANALYSIS

Petitioner claims his detention violates the Fifth Amendment Due Process Clause.[3] (ECF No. 1 at 31–34.) In opposition, Respondents contend Petitioner is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)"). (ECF No. 9 at 1.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (2001). These due process rights extend to immigration proceedings, including detention and deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies,

[3] Petitioner also challenges his detention as violating the Fourth Amendment and the Administrative Procedure Act, pursuant to the district court's ruling in *Garro Pinchi v. Noem*, 813 F. Supp. 3d 973 (N.D. Cal. 2025). (ECF No. 1 at 34–35.) Finding relief warranted on Petitioner's due process claim, the Court declines to address these additional claims in favor of judicial economy.

the question remains what process is due.").

A. Liberty Interest

As to the first step, the Court finds Petitioner has a clear liberty interest in his continued freedom protected by the Due Process Clause. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). Even if he is subject to removal or his freedom could be revoked by statute, Petitioner's liberty is still protected by the Due Process Clause. *See Hernandez*, 872 F.3d at 993, *Zadvydas*, 533 U.S. at 693. Respondents do not dispute that Petitioner has a protected liberty interest. (*See generally* ECF No. 9.)

Instead, Respondents' sole argument is that Petitioner is an "applicant for admission" subject to mandatory detention under § 1225(b)(2). Respondents' argument as to the applicability of § 1225(b)(2) is unavailing as the Ninth Circuit has confirmed the government's interpretation of the statute is incorrect. *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1165 (9th Cir. 2026).

The mandatory detention scheme of § 1225(b)(2) applies only to noncitizens entering the United States at the border. *Id.* at 1172. In contrast, individuals like Petitioner who are "present without admission who are apprehended in the interior of the United States," are subject to discretionary detention under 8 U.S.C. § 1226(a) ("1226(a)"). *Id.* at 1165. Additionally, the government's decision to release Petitioner on humanitarian parole and allow him to remain in the community for years created a powerful liberty interest. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Accordingly, the Court finds Petitioner maintains a clear interest in his continued liberty protected by the Due Process Clause.

B. Procedures Required

To determine what process is necessary to ensure any deprivation of Petitioner's protected liberty interest accords with the Constitution, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of

such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, these factors support Petitioner's constitutional right to notice and a hearing.

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by the government's actions detaining him. The amount of time Petitioner spent at liberty underscores the gravity of its loss. *See Doe*, 787 F. Supp. 3d at 1094. Accordingly, this factor weighs in favor of finding Petitioner has a significant private interest that has been affected by his detention.

Second, the risk of erroneous deprivation of Petitioner's liberty interest is significant. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for his detention to comport with due process. *Zadvydas*, 533 U.S. at 690. While "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," Petitioner has received virtually no procedural safeguards to ensure any detention is reasonably related to those purposes. *Hernandez*, 872 F.3d 976. Most significantly, Petitioner has not been afforded the "initial bond hearing before a neutral decisionmaker" to which he is entitled by statute. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022).

Respondents highlight Petitioner's criminal history in opposing his request for immediate release. (ECF No. 9 at 1.) As explained above, Petitioner was arrested for serious offenses stemming from an alleged domestic violence incident. (*See* ECF No. 1 at 44 (supportive declaration from Petitioner's wife describing "a heated, emotional argument" which "escalated rapidly").) Such arrests lower the risk of erroneous deprivation by indicating a potential danger to the community. It is not this Court's role to determine whether Petitioner is a danger or flight risk. However, additional procedural safeguards would be probative to determine whether Petitioner's detention is justified and to mitigate the risk of erroneous deprivation. *See R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025).

Third, the government's interest in detaining Petitioner without notice and a hearing is low. The effort and cost required to provide Petitioner procedural safeguards are minimal. *See Doe*, 787 F. Supp. 3d at 1094. Notice and custody determination hearings are routine processes for Respondents. Any burden associated with their provision does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation. Respondents articulate no legitimate interest in detaining Petitioner absent these processes.

Upon consideration of the *Mathews* factors, the Court finds Petitioner is entitled to notice and a hearing before a neutral decisionmaker. He has received neither. Petitioner's detention thus violates the Fifth Amendment Due Process Clause.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART the Petition for Writ of Habeas Corpus. (ECF No. 1.) IT IS HEREBY ORDERED:

1. Respondents are ENJOINED from continuing to detain Petitioner for more than **seven (7) days** from the date of this Order (unless Petitioner seeks additional time to prepare) without a bond hearing before a neutral factfinder at which the government bears the burden to establish by clear and convincing evidence that Petitioner's ongoing detention is justified due to danger to the public or flight risk. The factfinder must consider Petitioner's financial circumstances for bond and alternative conditions of release. At any such hearing, Petitioner shall be allowed to have counsel present. If the government fails to meet its burden, Respondents must immediately release Petitioner. Respondents may impose any restrictions or conditions determined to be necessary by the factfinder at the hearing.

2. Within **two (2) court days** from the date of the bond hearing, Respondents must file a **notice of compliance** with this provision of the Court's Order confirming that the hearing occurred, the date of the hearing, the outcome of the hearing, and Petitioner's custody status.

3. If Petitioner is released, Respondents are further ENJOINED from re-detaining Petitioner, while subject to 8 U.S.C. § 1226, absent changed circumstances and compliance with constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral factfinder where the government must establish by clear and convincing

evidence that its interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention such that no alternative to detention can mitigate that risk. At any such hearing, Petitioner shall be allowed to have counsel present.

4. The parties are advised that any further challenges related to Petitioner's current detention should be filed in this case, using the aforementioned case number (Case No. 1:26-cv-08341-TLN-CSK).

5. The Application to Proceed In Forma Pauperis is GRANTED. (ECF No. 2.)

6. The Motion for Temporary Restraining Order is DENIED as moot. (ECF No. 3.)

7. The Motion to Appoint Counsel is DENIED as moot. (ECF No. 4.)

8. **The Clerk of Court is directed to serve Central Valley Annex Detention Facility with a copy of this Order.**

9. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

DATE: October 26, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE